HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NC INTERACTIVE, LLC, a Delaware limited liability company,

Plaintiff,

v.

AMBER STUDIO S.A., a Romanian company; THE SYNDICATE PRODUCTION PTE LTD, a Singapore entity; SUPERPOWER LABS, INC., a Delaware corporation; JOHN DOES 1 through 10, inclusive,

Defendants.

Case No.2:22-cv-01251-RAJ

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## I.      INTRODUCTION

THIS MATTER comes before the Court on a Motion to Dismiss filed by Defendants, The Syndicate Production PTE LTD ("Syndicate") and Superpower Labs, Inc. ("Superpower") (collectively, "Syndicate Defendants"). Dkt. # 41. Plaintiff NC Interactive ("NCI" or "Plaintiff") opposes this motion. Dkt. # 48. Syndicate Defendants also filed a Motion for a Protective Order Staying Discovery Pending Resolution of Motion

to Dismiss. Dkt. # 67. Syndicate Defendants request oral argument, but the Court finds this unnecessary. *See* Local Rules W.D. Wash. LCR 7(b)(4). For the reasons below, the Court **GRANTS** in part and **DENIES** in part Syndicate Defendants' Motion to Dismiss. The Court **DENIES** as moot Syndicate Defendants' Motion for a Protective Order Staying Discovery. Dkt. # 67.

## II.  BACKGROUND

### A.  Procedural History

On September 7, 2022, NCI filed an initial complaint against Amber Studio SA ("Amber") alleging breach of contract, unjust enrichment, and copyright infringement. Dkt. # 1. On April 12, 2023, after Syndicate Defendants produced documents in response to a third-party subpoena, NCI filed its Amended Complaint that added Syndicate and Superpower as defendants in this action. Dkt. # 24. NCI's Amended Complaint (the "Complaint") is the operative complaint in this matter. NCI asserts claims of tortious interference, unjust enrichment, and copyright infringement against Syndicate Defendants. *See id.* On May 3, 2023, Amber filed its Answer and Counterclaims against NCI. Dkt. # 29. On June 6, 2023, Syndicate Defendants filed a motion to dismiss. Dkt. # 41.

### B.  Factual Allegations

The following is taken from the Complaint, which is assumed to be true for the purposes of Syndicate Defendants' motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1107 (9th Cir. 2002).

In 2019, Amber and NCI entered into a work-for-hire agreement for Amber to develop a video game named *Criminal Empire* (the "Game"). Dkt. # 24 ¶ 19. Under this agreement, Amber developed source code, images, characters, and other materials for the Game and NCI retained the rights to the related intellectual property. *See id*. In April 2020, NCI briefly and limitedly released the Game before taking it off the market. *Id*. ¶¶ 20-22. In July 2021, NCI and Amber were involved in negotiations for a licensing

agreement to allow Amber to further develop the Game. *Id*. ¶ 23. In September 2021, NCI and Amber executed the Game Licensing Agreement (the "GLA"). *Id*. ¶ 24.

The GLA contains rights and obligations that gave rise to this litigation. The GLA "granted Amber an exclusive, non-assignable, non-sublicensable, royalty-bearing license related to development, marketing, and distribution of the Game." *Id*. ¶ 26. The GLA also granted Amber a non-exclusive and non-sublicensable license "to use graphics, logos, trademarks, service marks, and characters associated with the Game (the 'Game Marks')." *Id*. ¶ 27. The GLA required Amber to submit a written plan for development of the Game, a proposal for Game service offerings, and a Game distribution plan to NCI. *Id*. ¶ 28. Additionally, the agreement prohibited Amber from disclosing confidential information to third parties without NCI's written consent. *Id*. ¶ 29.

NCI alleges Amber violated the terms of the GLA by secretly sublicensing the Game and derivate works of the Game to Syndicate Defendants. Dkt. # 24 ¶¶ 26-27; 32-35. The Complaint states that throughout negotiations of the GLA, Amber shared drafts of the agreement with the CEO of Syndicate and Superpower. *Id.* ¶ 23. NCI also asserts Amber and Syndicate negotiated a Master Services Agreement (the "MSA") in parallel with Amber and NCI's GLA negotiations. *Id*. ¶ 33. The Complaint states that Amber and Syndicate executed the MSA in October 2021, which was two weeks after Amber and NCI executed the GLA. *Id*. ¶ 33.

NCI alleges Amber provided Game materials to Syndicate Defendants in order to keep the profit from NCI. *Id*. ¶¶ 72-74. NCI asserts that Amber supplied Game materials to Syndicate Defendants, for the benefit of Syndicate Defendants, while Amber developed non-fungible tokens ("NFTs") using Game images. *See id*. ¶¶ 2, 36-42, 67-69. Thereafter, Amber and Syndicate Defendants rebranded the Game, initially renaming it "Syn City" and later "MOBLAND," to facilitate the marketing and sale of NFTs. Dkt. # 24 ¶¶ 36-45. NCI alleges Amber and Syndicate Defendants did this, without NCI's consent and in

breach of the GLA, to sell cryptocurrency products and retain millions in proceeds for themselves. *See id*. ¶¶ 3, 45, 63.

In July 2022, NCI notified Amber that it was terminating the GLA. *Id.* ¶ 48. After the termination of the GLA, NCI alleges Amber and Syndicate Defendants continued to use NCI's intellectual property and market the sale of the cryptocurrency products. *Id.* ¶ 49.

### III.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *See Sanders*, 504 F.3d at 910. A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.   DISCUSSION

**A.   Syndicate and Superpower**

Syndicate Defendants argue briefly that the Complaint fails to allege any specific acts attributable to Superpower versus Syndicate and erroneously treats them interchangeably. *See* Dkt. # 41 at 12 n.6; *id*. at 13 n.7. However, the Court finds that this is a factual dispute about the identity of the parties, rather than insufficient pleading, and will treat Syndicate and Superpower the same for the purposes of resolving this motion.

The Complaint alleges "Amber was secretly sharing copies of the draft Agreement with Roy Liu, who on information and belief is the majority owner and CEO of Syndicate and Superpower." Dkt. # 24 ¶ 23. Syndicate Defendants dispute Roy Liu's role in these companies. *See* Dkt. # 54 at 7-8. In the Complaint, Plaintiff alleges that Syndicate and Superpower failed to provide discovery that would provide further information as to Superpower's ownership and organizational structure. Dkt. # 24 ¶ 55. Plaintiff used the information available at the time in forming its allegations, and it is improper to dispute these facts at the pleading stage. Therefore, at this time, this Court will not dismiss the claims against Superpower due to a failure to allege specific facts attributable to Superpower.

**B.    Judicial Notice**

Syndicate Defendants request that this Court take judicial notice of the GLA because it is an exhibit attached to the Complaint. Dkt # 41 at 6 n.3; *see* Dkt. # 24, Ex. A. Defendants also seek consideration of the MSA through the "incorporation by reference" doctrine because the Complaint refers to and relies on the document. Dkt # 41 at 11 n.5; *Id.*, Ex. 1.

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Under the doctrine of incorporation by reference, the Court may not only consider documents attached to the complaint on a 12(b)(6) motion, but also documents whose contents are alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The purpose of

this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal quotation marks omitted). The doctrine should not be used to "short-circuit the resolution of a well-pleaded claim," and it is improper for a court to "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

With these principles in mind, the Court takes judicial notice of the GLA and MSA. Judicial notice is proper because these contracts are integral to the Complaint and no party disputes their identity and accuracy. To the extent Syndicate Defendants utilize these documents to contest facts, the Court cannot and will not consider their contents for such purposes when ruling on a motion to dismiss. Notice is not appropriate for the substantive truth of any representations made in the contracts. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court cannot "take judicial notice of a fact" in the GLA or MSA "that is 'subject to reasonable dispute.'" *Id*. at 689 (quoting Fed. R. Evid. 201(b)).

**C.     Copyright Claims**

Syndicate Defendants move to dismiss copyright claims on the basis of an affirmative defense that they acted as contractors within the scope of Amber's license. Dkt. # 41 at 14-16. Syndicate Defendants assert that because the GLA contemplated Amber's use of third parties, Syndicate Defendants' actions were permitted under the licensing agreement. *See id*. at 10. Syndicate Defendants purport they were merely third-party contractors used by Amber to develop the Game. *See id*.

To support the defense, Syndicate Defendants cite to the MSA and GLA to dispute Plaintiff's claims that they were impermissible sublicensees. *See id.* at 9-12, 14-16. Additionally, Syndicate Defendants cite to information not subject to judicial notice such as Defendant Amber's Counterclaims and the definition of "contractor" in Black's Law Dictionary. *See id.* 6-9; *see also* Dkt. # 54 at 6. Syndicate Defendants fail to show that

they are entitled to assert that defense at this stage of the litigation. At the motion to dismiss stage, it is premature for a court to interpret contract terms and consider disputed facts outside the Complaint.

To assert a valid copyright infringement claim, a plaintiff must plausibly assert "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

The facts in the Complaint assert NCI owns a valid copyright and that Syndicate Defendants copied and used these images. *See* Dkt. # 24 ¶ 72. Here, NCI has met its burden of alleging that it has a valid copyright, as the Complaint states NCI is the "exclusive owner of rights in and to the Game and Game Marks and all derivative works." *Id*. The Complaint states that Syndicate and Superpower copied and used NCI's copyrighted material to sell millions of dollars of cryptocurrency products. *Id*. ¶¶ 3, 45. It further alleges that Syndicate Defendants are sublicensees, rather than third-party contractors, which the GLA expressly prohibits. *Id*. ¶¶ 2, 35. Therefore, Plaintiff's allegations are sufficient to state a claim for copyright infringement and that Syndicate Defendants' conduct was outside the scope of the license.

Accordingly, the Court **DENIES** Syndicate Defendants' motion to dismiss Plaintiff's copyright infringement claims.

**D. Unjust Enrichment**

Syndicate Defendants argue that Plaintiff's unjust enrichment claim fails for three reasons: 1) the Copyright Act preempts NCI's unjust enrichment claim; 2) the GLA bars NCI's unjust enrichment claim; and 3) NCI fails to state a claim for unjust enrichment under Washington State law. Dkt. # 41. For the reasons below, the Court finds that NCI has failed to state a claim for relief under Washington State law.

"Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991)). "Three elements must be established in order to sustain a claim based on unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Id*. (quoting *Bailie Commc'ns*, 810 P.2d at 18). Washington courts are clear that the "plaintiff must confer a benefit on the defendant to satisfy the first element of unjust enrichment." *Lavington v. Hillier*, 510 P.3d 373, 379 (Wash. Ct. App. 2022) (compiling cases), *rev. denied*, 518 P.3d 212 (Wash. 2022).

The Washington Court of Appeals has repeatedly held that the first element of an unjust enrichment claim requires the plaintiff to confer a benefit on the defendant directly. *See, e.g., Lavington*, 510 P.3d at 379; *Falcon Props. LLC v. Bowfits 1308 LLC*, 478 P.3d 134, 140 n.3 (Wash. Ct. App. 2020) (holding buyer's unjust enrichment claim against broker failed where seller, rather than buyer, paid the broker's commission and thus buyer did not confer a benefit on the broker); *Allyis, Inc. v. Schroder*, No. 74511-5-I, 2017 WL 751329, at *4-5 (Wash. Ct. App. Feb. 27, 2017) (unpublished) (compiling cases and affirming the trial court's determination that the first element of an unjust enrichment claim requires the plaintiff to "directly confer a benefit on the defendant").

The Complaint states that NCI conferred a benefit upon "Amber when it transferred NC Interactive's intellectual property and non-public, proprietary information to Amber . . . [and] Amber transferred that property to Syndicate and Superpower, which used NC Interactive's property to create and sell NFTs and SYNR tokens without the necessary contractual rights." Dkt. # 24 ¶ 67. Plaintiff's articulation of the facts indicate that any benefit Syndicate Defendants may have received was conferred by Amber, not by NCI.

Plaintiff's unjust enrichment claim relies on the indirect conferral of a benefit through Amber's transaction with Syndicate Defendants. Therefore, NCI has not plausibly established the first element of their unjust enrichment claim. The Court **GRANTS** Syndicate Defendants' motion to dismiss NCI's unjust enrichment claim. Accordingly, the Court need not reach Syndicate Defendants' other arguments regarding the unjust enrichment claims.

On a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The Court concludes that Plaintiff can plead no facts consistent with the allegations in the Complaint that would enable them to cure its unjust enrichment claim. Therefore, the Court DISMISSES Plaintiff's unjust enrichment claim against Syndicate Defendants with prejudice and without leave to amend.

### E. Tortious Interference

Syndicate Defendants argue that Plaintiff fails to allege facts of intentional interference or improper purpose to support the third and fourth elements of a tortious interference claim. *See* Dkt. # 41 at 22-25.

Under Washington State law, to plead a claim for tortious interference with a business expectancy, a plaintiff must allege "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash.2d 133, 157 (1997). The fourth element requires the interference to "be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Moore v. Commercial Aircraft Interiors, LLC*, 278 P.3d 197, 200 (Wash.

2012).

Syndicate Defendants argue that the MSA indicates that they clearly intended not to interfere with NCI and Amber's relationship. *See* Dkt. # 41 at 23. Syndicate Defendants cite express warranties in the MSA to dispute Plaintiff's claims that they intentionally interfered with Amber and NCI's business relationship. *Id.*; *see also* Dkt. # 41, Ex. 1. However, Defendants' intent is a disputed fact and "a court may not take notice of a fact that is 'subject to reasonable dispute.'" *Lee*, 250 F.3d at 689 (quoting Fed. R. Evid. 201(b)). In any event, the issue before the Court is not whether Syndicate Defendants had an intention to interfere, but rather to determine whether Plaintiff plausibly stated claim for relief.

Plaintiff's Complaint asserts that Syndicate Defendants intentionally interfered with Amber's obligations under the GLA. *See* Dkt. # 24 ¶¶ 78-83. Plaintiff alleges that Syndicate Defendants knew they were using NCI's images and that Amber did not have written authorization to do so. *Id.* ¶ 36. Further, Plaintiff alleges that Syndicate Defendants knew about Amber's obligation to pay royalties on items such as NFTs but did not share the revenue from their cryptocurrency product sales with NCI. *Id.* ¶¶ 39-40, 81-83. Additionally, Plaintiff alleges Syndicate Defendants knew about the sublicensing prohibition and signed the MSA in parallel with the GLA without disclosing information about it to NCI. *Id.* ¶¶ 33-34. These allegations are sufficiently detailed to plausibly claim that Syndicate Defendants intentionally interfered with NCI and Amber's business relationship. Therefore, NCI has alleged facts to establish the third element of tortious interference.

Further, Syndicate Defendants argue that NCI fails to establish an interference through improper means or for an improper purpose. Dkt. # 41 at 24. The Court agrees. For the fourth element, the interference "must be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Moore*, 278 P.3d at 200. The Complaint

fails to state a wrongful measure beyond the interference itself.  *See* Dkt. # 24 ¶¶ 78-83.

The Court concludes that it is possible for Plaintiff to plead facts consistent with the allegations in the Complaint that would cure its tortious interference claim.  Therefore, the Court DISMISSES Plaintiff's tortious interference claim with leave to amend within 21 days of the entry of this Order.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Syndicate Defendants' Motion to Dismiss.  Dkt. # 41.  Plaintiff's unjust enrichment claims against Syndicate and Superpower, Dkt. # 24 ¶¶ 65-69, are **DISMISSED** with prejudice.  The Court grants Plaintiff leave to file an amended complaint within 21 days of the entry of this Order.  In light of this ruling, the Court **DENIES** as moot Syndicate Defendants' Motion for a Protective Order Staying Discovery.  Dkt. # 67.

Dated this 26th day of April, 2024

_____
The Honorable Richard A. Jones
United States District Judge